THOMPSON, Judge.
After conducting due-process proceedings, Rick Allison, the probate judge for Walker County (“Judge Allison”), discharged permanent county employee Elizabeth Barnett as an employee of the Walker Probate Court in April 2002. Barnett’s employment was terminated because of her handling of two transactions. Barnett appealed the termination to the Civil Service Board of Walker County (“the Board”), pursuant to § 14(a) of Act No. 200, Ala. Acts 1969, p. 263 (“the Act”), a local act applicable only to Walker County. On May 14, 2002, the Board held a hearing at which it received ore tenus evidence. On June 5, 2002, the Board entered a detailed decision determining that Judge Allison’s termination of Barnett’s employment was too harsh and that a reprimand would have been more appropriate. The Board’s decision, in pertinent part, states:
“... Elizabeth Barnett is an employee of the Probate Office, serving as a C-3 Clerk since July of 1999. The termination of Ms. Barnett by the Probate Judge was based upon errors in handling two transactions, one involving a 1999 Kawasaki ZX900 [motorcycle] and the other involving a 2002 Ford F260 pickup [truck].
“The transaction involving the Kawasaki motorcycle centered around a customer making application for title. Ms. Barnett, in seeking information from the customer asked, in reference to information regarding [the] lienholder[,] if the customer had paid ‘cash.’ The customer’s response was ‘Yes.’ Upon that response, Ms. Barnett placed ‘None’ in the space showing whether there was a lien-holder. Upon further discussion, ... Barnett obtained information that the customer had made a ‘cash down payment’ but that there was a lienholder and [the customer] identified the lien-holder. Ms. Barnett then told the customer that there was a mistake [on the title form] and that there would have to be a correction made in order to complete the transaction. The customer refused to allow the correction to be made and left the Courthouse with the title information showing there was no lien-holder. Ms. Barnett reported this to her supervisor. Ms. Barnett’s supervisor testified that had she been in that *779 situation and the customer told her he paid cash that she would have assumed, as did Ms. Barnett, that there was no lien.
“The transaction involving the 2002 Ford F250 pickup [truck] deals with application for title of a vehicle that was purchased out of State. The documents [were] provided by the out-of-State dealer to the Probate Judge and [came] into the Probate Judge’s Office by certified mail or Federal Express. Jill Farris, the customer, had called the Probate Judge’s Office to see if the information had been received by the Probate Judge. She was first told that it was not there. The employee later called Jill Farris back at her place of employment and told her the information was in fact in the Probate Judge’s Office. Jill Farris then went to the Probate Judge’s Office to handle the transaction. Upon the customer coming into the Probate Judge’s Office, Ms. Barnett gained access to the documents provided by the out-of-State dealer. The information received from the dealer showed the owner to be David Farris with a lienholder. In the discussion between the customer and Ms. Barnett, it was learned that the customer was actually the wife of David Farris and Ms. Farris instructed Ms. Barnett that the title should be in the name of David Farris or Jill Farris. Jill Farris reviewed the document received from the dealer and Ms. Farris later testified that she, herself, added her name to the title without the knowledge and/or permission of Ms. Barnett. Ms. Barnett completed the application for title, showing title to be in David’ Farris or Jill Farris.
“There is also a requirement that the vehicle must be actually inspected by the Probate Judge Clerk in order to assure that it is in fact the same vehicle being dealt with. This inspection is usually done by the title clerk issuing the application for title or is sometimes done by someone at the Clerk’s request.- In this particular situation, there was an inspection form faxed from the Probate Judge’s Office to an employee in the County Commission Office by the name of Susan Russell, who had previously worked in the Probate Judge’s Office. Ms. Russell actually inspected the vehicle. She made a statement to Jill Far-ris, who was the ultimate customer, that ‘Camilla faxed an inspection form to me to inspect your vehicle.’ Susan Russell testified that she inspected the vehicle and gave the completed form to Jill Far-ris with her initials on the inspection form. Jill Farris took the completed inspection form along with her to the Probate Judge’s Office to make application for title.- This inspection form was presented to Ms. Barnett and she accepted it based on the information that Jill Farris gave her regarding the inspection. It is not unusual for someone other than the Clerk to make the inspection. The title was subsequently issued to David Farris or Jill Farris.
“Jill Farris picked up the document from Ms. Barnett’s desk and noticed that her name was not on the Bill of Sale and informed Ms. Barnett that her name was supposed to be on the title. Ms. Barnett responded T cannot add your name’ and it was at that time that Jill Farris added her name to the document. Following the transaction in the Probate Judge’s Office, title was issued in the name of David Farris or Jill Harris. The documentation at the dealership showed a Bill of Sale to David Farris only and all the documents regarding the financing and lien [were] in [the name of] David Farris only and Jill Farris was not on the papers financing the vehicle. This error, when detected *780 by the Probate Judge’s Office, caused considerable concern and considerable time and effort to cure the problem. At the time of the hearing, the problem regarding the 2002 Ford F250 vehicle was still not corrected and the effort was still being made by the Probate Judge’s Office to correct said error.
“The Probate Judge had a meeting with Ms. Barnett to informally discuss these two problems. Following the discussion, Ms. Barnett was later given a pre-termination hearing and this was followed by a letter of termination by the Probate Judge. Judge Allison testified that he considered this to have been done intentionally and that it was not a mistake.
“The Board finds and takes judicial notice that this is the third attempt by the Probate Judge’s Office to reprimand, suspend and now terminate this employee. There has been considerable testimony before this Board regarding mistakes by other Clerks handling similar transactions without reprimand, suspension or termination.
“The Board further finds that the training procedures in the Probate Judge’s Office are somewhat deficient and one of the supervisors testified that, while they have made no changes in procedures, that they were requiring more strict adherence.
“The Board further finds that the action by the Probate Judge to terminate the employee in this particular situation was too harsh and that a reprimand would have been more appropriate.
“IT IS THEREFORE THE ORDER OF THE WALKER COUNTY CIVIL SERVICE BOARD THAT Elizabeth Barnett was in fact aggrieved by her termination and that she is to be reinstated in her position as Clerk 3 in the Probate Judge’s Office and that she is to be paid for any cut in pay she has received as a result of the action of the hiring authority.”
Judge Allison appealed the decision of the Board to the Walker Circuit Court, pursuant to § 14(b) of the Act. Thereafter, the parties filed briefs with the circuit court in support of their respective positions. In his brief, Judge Allison argued that the Board, “[i]n reaching a legal conclusion that Judge Allison could not terminate Mrs. Barnett, ... exceeded it’s authority, substituted its judgment for that of Judge Allison, who, by Statute, is the hiring/terminating authority, and [that its conduct] was a misapplication of law.” The Board, on the other hand, argued that it had properly exercised its statutory authority when it set aside Barnett’s discharge and instead reprimanded Barnett for her misconduct.
After conducting a review of the parties’ briefs and the transcript of the proceedings conducted by the Board, the circuit court entered a judgment on April 15, 2004, reversing the decision of the Board and reinstating Judge Allison’s termination of Barnett’s employment. Although the circuit court did not find fault with the Board’s findings of fact, it nevertheless set forth its own statement of facts and emphasized some facts with more intensity than did the Board. The circuit court’s judgment stated, in pertinent part:
“While this Court does not fault the Board’s overall finding of fact, this Court does find fault with the opinion or conclusion the Board draws therefrom; namely, that conclusion that ‘the action by the Probate Judge to terminate the employee in this particular situation was too harsh and that a reprimand would have been more appropriate’; and the conclusion that ‘Elizabeth Barnett was “in fact ” aggrieved by her termination.’
*781 “While the sanctity of the Board’s ‘findings of fact’ is protected by the Act of the Legislature creating the Board, the sanctity of the Board’s ‘conclusion’ drawn therefrom is not so protected.
“Therefore, the circuit court may and should reverse the decision of the Board, if the court determines that such conclusions drawn by the Board from legitimate ‘findings of fact’ are incorrectly decided; that is, if the board has improperly applied its legitimate findings of fact to reach a final conclusion or decision in a matter. Daniels v. Bowers, 518 So.2d 736 (Ala.Civ.App.1987); Thompson v. Alabama Department of Mental Health, 477 So.2d 427 (Ala.Civ.App.1985); Stewart v. Hilyer, 376 So.2d 727 (Ala.Civ.App.1979).
“Therefore, while this Court does not fault the Board’s ‘finding of fact’ (wherein the Board notes that Clerk Barnett committed these acts, one would suppose because she freely admits it); this Court does find fault with the Board’s improper application of those findings in arriving at the opinions or the conclusions the Board draws therefrom.
“IT IS THEREFORE THE ORDER, JUDGMENT AND DECREE OF THIS COURT AS FOLLOWS:
“1. An employer, particularly one charged with the public trust (of official documents in this case), has not only the right but the duty to fire an employee who not only condones the forgery of a protected document, said forgery being committed in her actual presence, but who goes as far as to actively participate in such crimes by suggesting or encouraging the commission of that crime.
“2. The Judge of Probate’s discharge of Elizabeth Barnett is appropriate under the facts in this case. More accurately stated, the level of egregiousness of the conduct of Mrs. Barnett in these matters is so gross that her discharge is not only appropriate, it is demanded by the public trust.
“3. The discharge of Elizabeth Barnett shall remain in full force and effect as originally made by Judge Allison.
“4. The decision of the Board is therefore reversed and rendered accordingly.”
Barnett timely appealed. Barnett contends on appeal that the circuit court went beyond the scope of its judicial review under § 14(b) of the Act in reversing the decision of the Board. Judge Allison argues that the circuit court was within its statutory authority to reverse the “ultimate legal conclusion/opinion” of the Board.
Walker County operates under a civil-service system established by the Act. Section 14 of the Act, which governs the appointment, removal, tenure, and official conduct of employees of the county, provides, in pertinent part:
“(a) The governing body of the county, any member of the governing body, or the head of any department or office can remove, discharge or demote any employee, officer or official of the county who is subject to the provisions of this Act and who is directly under such governing body, member thereof, or department head, provided that within five days a report in writing of such action is made to the Board, giving the reason for such removal, discharge or demotion. The employee shall have ten days from the time of notification of his discharge, removal or demotion in which to appeal to the Board. The Board shall thereupon order the charges or complaint to be filed forthwith in writing and shall hold a hearing de novo on such charges. No permanent employee, officer, or official of the county whose employment comes within the jurisdiction of this Act, *782 and whose probationary period has been served, shall be removed, discharged, or demoted except for some personal misconduct, or fact, rendering his further tenure harmful to the public interest, or for some cause affecting or concerning his fitness or ability; and if such removal, discharge or demotion is appealed to the Board, then the same will become final only after a hearing upon written charges of complaint has been had and after an opportunity has been given him to face his accusers and be heard in his own defense. Pending a hearing on said appeal, the affected employee may be suspended; and after such hearing the Board may order said employee reinstated, demoted, removed, discharged, or suspended, or take such other disciplinary action as in their judgment is warranted by the evidence and under the law. ...
[[Image here]]
“(b) Any person aggrieved by a decision of the Board may appeal such decision to the circuit court of Walker County in equity within thirty days from the rendition of such decision by the Board. Review by the court shall be without a jury and be confined to the record and to a determination of the questions of law presented; the Board’s findings of fact shall be final and conclusive.”
This court, in Guthrie v. Civil Service Board of Jasper, 342 So.2d 372 (Ala.Civ.App.1977), a case involving a virtually identical provision under § 14 of Act No. 113, Ala. Acts 1965, p. 162,[1] stated:
“Subsection (b) provides that the findings of fact made by the Civil Service Board are final and conclusive. On appeal the circuit court is limited to a review of the record made before the Board and questions of law presented. Under such circumstances this court’s review is also based on a review of the record made before the Board and we look only to see if its findings are supported by substantial evidence. See City of Mobile v. Personnel Board for Mobile County, 57 Ala.App. 516, 329 So.2d 570 (1976); Edmondson v. Tuscaloosa County, 48 Ala.App. 372, 377, 265 So.2d 154 (1972).
“Furthermore, after a careful reading of subsection (a), we conclude that the legislature intended to give broad quasi-judicial powers to the Jasper Civil Service Board. In Edmondson v. Tuscaloosa County, supra, we reviewed a similar statute and held that where there is substantial evidence to support the discretionary authority of the discharging board, no authority is reposed in the reviewing circuit court to supplant the board’s judgment with its own.
“In the situation presented by the case at bar, the review by the circuit court is in effect that of certiorari. Grant v. City of Mobile, 50 Ala.App. 684, 282 So.2d 285, cert. den. 291 Ala. 458, 282 So.2d 291 (1973). On such review the court is restricted to examining only the external validity of the proceeding. Alabama Electric Cooperative v. Alabama Power Co., 278 Ala. 123, 176 So.2d 483 (1964); Phelps v. Public Service Commission, 46 Ala.App. 13, 237 So.2d 499 (1970). We do not believe that we can violate these restrictions any more than could the circuit court in deciding the question presented by appellant.”
Guthrie v. Civil Serv. Bd. of Jasper, 342 So.2d at 374-75.
*783 Applying the foregoing principles to the facts in the present case, we must agree with Barnett that the circuit court went beyond the limited scope of its judicial review under § 14(b) of the Act in reversing the decision of the Board. Although we agree with the policy considerations set forth in the circuit court’s judgment for upholding an appointing authority’s discharge of an employee whose egregious conduct clearly violates the public trust, the Board was acting within its statutory authority under § 14(a) of the Act when it reduced Barnett’s discharge to a lesser penalty, i.e., a reprimand. As stated in Guthrie v. Civil Service Board of Jasper:
“ ‘It is not a question of sustaining the action of the official making the discharge. The hearing before the Board is upon the formal charges made by the discharging authority, but the hearing before the Board is entirely de novo and the Board is free to take such action as in its judgment is icarranted by the evidence.’ ”
342 So.2d at 376 (quoting Edmondson v. Tuscaloosa County, 48 Ala.App. 372, 377, 265 So.2d 154, 158 (Civ.1972)) (emphasis added). Although the circuit court attempted to justify its reversal of the Board’s decision by characterizing the Board’s decision as an “improper[] application of] its legitimate findings of fact to reach an [incorrect legal] conclusion,” it appears that the circuit court actually reweighed the evidence and substituted its judgment for that of the Board. Although the circuit court and possibly this court may not have reached the same conclusion as the Board as to the appropriate disciplinary action for Barnett, the circuit court is not permitted to substitute its judgment for that of the Board under the limited scope of its judicial review. Guthrie v. Civil Serv. Bd. of Jasper, supra. Accordingly, the judgment of the circuit court is due to be reversed, and the decision of the Board is to be reinstated.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY, PITTMAN, and MURDOCK, JJ„ concur.

. Act No. 113, Ala. Acts 1965, “governs the appointment, removal, tenure and official conduct of employees of the [C]ity [of Jasper].” Guthrie v. Civil Serv. Bd. of Jasper, 342 So.2d at 374.